UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                              Case No. 17-cr-20298
                                            Hon. Matthew F. Leitman
v.

JAMES ELBERT,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE HIS SENTENCE (ECF No. 74)

In 2017, Defendant James Elbert pleaded guilty to one count of kidnapping in violation of 18 U.S.C. §§ 1201(a) and 2 and one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (*See* Rule 11 Plea Agmt., ECF No. 44.) The Court then sentenced Elbert to two concurrent terms of 260-months imprisonment on each count. (*See* Judgment, ECF No. 65, PageID.335.) He has now filed a motion to vacate his sentence under 28 U.S.C. § 2255. (*See* Mot., ECF No. 74.) In the motion, he argues that his appointed attorney provided ineffective assistance of counsel in connection with sentencing in two respects.

First, Elbert says that his counsel misled him into pleading guilty by falsely assuring Elbert that he (counsel) would advocate for a sentence of fifteen years in prison. Elbert's lawyer – who sought a sentence of not more than 20 years – denies making such a promise. The Court held an evidentiary hearing at which it heard

1

testimony from Elbert and his lawyer on this dispute. The Court believes Elbert's lawyer and disbelieves Elbert. For that reason and the other reasons described below, the Court will **DENY** relief on Elbert's claim that his attorney provided ineffective assistance by misleading Elbert into believing that he (counsel) would seek a 15-year sentence.

Second, Elbert contends that his attorney failed to argue that his (Elbert's) three prior Michigan drug convictions did not qualify as serious drug offenses under the Armed Career Criminal Act. But as Elbert candidly acknowledges, that argument is foreclosed by Sixth Circuit precedent. The Court will therefore **DENY** Elbert's motion on this ground as well.

I

A

On October 4, 2017, Elbert was charged in a second superseding indictment with seven offenses: conspiracy to kidnap in violation of 18 U.S.C. §§ 1201(a) and 1201(c), kidnapping in violation of 18 U.S.C. §§ 1201(a) and 2, possession and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(a), felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(e), felon in possession of a firearm in of 18 U.S.C. § 922(g)(1) and 924(e), possession of a stolen firearm in violation of 18 U.S.C. § 922(j), and distribution of heroin in violation of 21 U.S.C. § 841(a)(1). (*See* Sec. Superseding

Indictment, ECF No. 36.) At that time, he was represented by appointed defense counsel Craig Daly.

Daly and the Government entered into plea negotiations. At the conclusion of those negotiations, the Government offered to permit Elbert to plead guilty to the kidnapping and felon in possession of ammunition counts under a deal that included (1) a minimum term of 180 months (15 years) years in custody (which was a mandatory minimum based upon Elbert's three prior convictions for serious drug offenses) and (2) a sentencing cap of 300 months (25 years) in custody. (*See* 10/5/2017 Status Conf. Tr., ECF No. 95, PageID.575.) The sentencing cap in the offer was favorable for Elbert because his sentencing guidelines range called for a sentence of between 360 months (30 years) and life in prison. (*See id.*, PageID.575, 577-578.) Moreover, the offer spared Elbert from the mandatory minimum sentence of 264 months (22 years) in prison that he would have faced if he was convicted at trial on all charges. (*See id.*)

The parties appeared for a status conference before the Court on October 5, 2017. At that conference, the terms of the Government's offer were placed on the record, and Elbert indicated that he would not accept the offer. (*See id.*, PageID.577.)

Elbert then told the Court that he was dissatisfied with Daly's representation and that he wanted the Court to appoint new counsel for him:

3

THE COURT: Okay. Mr. Elbert, what do you want to do with Mr. Daly? There has been some suggestions to my staff that you were going to ask me, today, to remove Mr. Daly as your lawyer and appoint a new lawyer.

THE DEFENDANT: Yes.

THE COURT: Is that what you're asking me?

THE DEFENDANT: Yes.

THE COURT: All right. Why are you asking me to do that?

THE DEFENDANT: Because every time I asked Mr. Daly to do something, he just tells me, no, they are not going to do that; no, they are not going to do that. It -- he's not actually coming to ask me, he's just telling me no to everything.

THE COURT: All right. Are you referring to where you were giving Mr. Daly your thoughts on the plea negotiation process?

THE DEFENDANT: That, and other things, too. I asked him about the -- the appeal on the Rule 11, and he told me they are not going to do that.

THE COURT: You mean -- I'm sorry. You are talking about the provision in the Rule 11 about a waiver of your appellate rights?

THE DEFENDANT: Yes.

THE COURT: Okay.

THE DEFENDANT: I asked him about that. There was few things I asked him, and he just kept telling me, no, they wouldn't do anything that I was asking him to do.

4

> Like I don't feel like he was trying to help me; he was trying to push the case off and get it over with.

(*Id.*, PageID.580-581.)

The Court then agreed to appoint new counsel for Elbert. It later appointed Attorney Jerome Sabbotta to replace Daly as Elbert's attorney.

Sabbotta obtained and reviewed the discovery materials from Daly, and he discussed the case at length with Daly. (*See* 2/25/21 Evid. Hr'g Tr., ECF No. 97, PageID.634-635, 641-642.) Sabbotta then met in person with Elbert on October 17, 2017, at the Genesee County Jail. (*See id.*, PageID.649.) At the conclusion of that meeting, Elbert agreed to accept the Government's earlier plea offer – *i.e.*, the offer that had been placed on the record at the October 5, 2017, status conference. (*See id.*, PageID.605.) Once again, that offer called for Elbert to plead guilty to kidnapping and being a felon in possession of ammunition and set a cap on Elbert's sentence of 25 years. Elbert signed a Rule 11 Plea Agreement memorializing his plea deal and entered a plea pursuant to that agreement on October 25, 2017. (*See* Rule 11 Plea Agreement, ECF No. 44.)

The criminal conduct to which Elbert admitted was very serious. In the Rule 11 Plea Agreement, he acknowledged that he and his accomplice threatened the victim over a drug debt, brandished a weapon, kidnapped the victim, tied up the victim, gagged the victim and covered his mouth with duct tape, and then called the

victim's family and threatened to kill the victim if the drug debt was not paid. (*See id.*, PageID.167-168.)

In preparation for sentencing, Sabbotta sought and received funds for a mental health evaluation of Elbert. That evaluation was performed by Dennis Sugrue, Ph.D.

Prior to sentencing, Sabbotta also prepared and filed a sentencing memorandum on Elbert's behalf. (*See* Elbert Sent. Mem., ECF No. 50.) Sabbotta attached Dr. Sugrue's evaluation as an exhibit to that memorandum. (*See* Dr. Sugrue Evaluation, ECF No. 50-2.) In the memorandum, Sabbotta offered a number of arguments on Elbert's behalf (including arguments based upon Dr. Sugrue's mental health evaluation), and Sabbotta asked the Court to impose a sentence of not more than 240 months (20 years) in custody. (*See* Elbert Sent. Mem., ECF No. 50, PageID.219.)

After Sabbotta filed the sentencing memorandum, he sent it to Elbert. (*See* 2/25/21 Evid. Hr'g Tr., ECF No. 97, PageID.612, 638.) Elbert reviewed the memorandum and did not object to Sabbotta's request that the Court not sentence him (Elbert) to more than 20 years in prison. (*See id.*, PageID.622, 638.)

The Government filed a sentencing memorandum in which it asked the Court to impose a sentence of 300 months (25 years) in custody. (*See* Gov't Sent. Mem., ECF No. 51, PageID.254.) The Government's memorandum highlighted the violent nature of Elbert's offenses. (*See id.*)

On February 15, 2018, the parties appeared before the Court for sentencing. Consistent with the sentencing memorandum he filed on Elbert's behalf, Sabbotta asked the Court to impose a sentence of not more than 240 months (20 years). (*See* 2/15/18 Sentencing Tr., ECF No. 73, PageID.373.) Elbert then spoke to the Court. He did not ask for a sentence of fifteen years, nor did he complain that Sabbotta had failed to ask for such a sentence. (*See id.*, PageID.375-377.) The Government again asked the Court to impose a sentence of 300 months (25 years) based upon Elbert's "horrific" and "brazen" crimes. (*Id.*, PageID.377, 379.)

After listening carefully to the arguments made by Sabbotta by counsel for the Government, the Court decided to impose a sentence of 260 months. The Court explained:

> Mr. Elbert, my task is ultimately to impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. The government recommends a sentence of 300 months but respectfully, I think that is a bit greater than necessary to achieve the goals of sentencing in this case. Mr. Sabbota has asked for a sentence of no greater than 240 months but with respect, I think that is a bit short to achieve the goals of sentencing.
>
> In my view, an appropriate sentence here is 260 months in custody. I think that that is very serious medicine. It is very serious punishment. It appropriately accounts for the seriousness of the offense. It is way longer and way harsher than any sentence that has been imposed upon you before.

> But in terms of why I have gone substantially below what the government has requested and substantially below where the guidelines were, I think that that level of sentence I have imposed accounts for your childhood challenges. It accounts for your strong family support. And it accounts for Dr. Sugrue's observation that once you get the appropriate training -- excuse me -- treatment, that at that point, there is a substantially less risk that you will pose a threat to the community and a substantially greater likelihood that you will be able to rejoin us as a productive member of society.

(*Id.* ECF No.73, PageID.385-386.)

## B

On March 15, 2019, Elbert filed a motion under 28 U.S.C. § 2255 to vacate his sentence. (*See* Mot., ECF No. 74.) In that motion, Elbert argues that Sabbotta rendered ineffective assistance of counsel in two respects. First, Elbert contends that Sabbotta unreasonably failed to investigate whether Elbert's three prior drug convictions "were serious drug offenses under 18 U.S.C. 924(e)(2)(A)(ii)." (*Id.* PageID.396.) Second, Elbert argues that Sabbotta misled him into accepting the Government's plea offer by promising to seek a 15-year sentence. (*See id.*, PageID.397.) Elbert insists that if he knew that Sabbotta would not seek a 15-year sentence, he (Elbert) "would not have entered into the agreement, but instead would have proceeded to trial." (*Id.*) After reviewing Elbert's motion and the Government's response, the Court appointed counsel for Elbert and decided to hold an evidentiary hearing.

The Court held that evidentiary hearing on February 25, 2021.[1] Both Elbert and Sabbotta both testified at the hearing.

As relevant here, Elbert testified that:

- He first met Sabbotta in the Genesee County Jail. (*See* 2/25/21 Evid. Hr'g Tr., ECF No. 97, PageID.604-605.) The meeting lasted about 45 minutes. (*See id.*)

- During that first meeting, Sabbotta did not review any discovery with him, did not ask him any questions about the case, and did not "go over" the plea agreement with him. (*Id.*, PageID.604-606.)

- Instead, Sabbotta "just said [he (Elbert)] did it." (*Id.*, PageID.605.) Sabbotta also said that he (Elbert) "shouldn't get more than 15 years." (*Id.*, PageID.605.) Finally, Sabbotta also told him that he (Sabbotta) "would argue for 15 years." (*Id.*) He (Elbert) then signed the plea agreement – the same plea agreement that he had earlier refused to sign when represented by Daly. (*See id.*) He signed the agreement "with the understanding of, [Sabbotta] was going to argue for 15 years." (*Id.*, PageID.606.)

- When he appeared before the Court to enter the plea, the Court asked if anyone had made any promises that were not reflected in the plea

---

[1] The evidentiary hearing was held virtually using the video conference platform Zoom. All parties – including Elbert – consented to holding the evidentiary hearing by video.

9

agreement to induce him to plead guilty, and he did not say anything about Sabbotta's promise to advocate for a 15-year sentence. (*See id.*, PageID.619.)

- He and Sabbotta met a second in the Clare County Jail after he (Elbert) entered his plea. (*See id.*, PageID.607.) The purpose of the meeting was to review the draft presentence investigation report. (*See id.*) During that meeting, Sabbotta again said that he (Sabbotta) did not anticipate that he (Elbert) would receive a sentence of more than 15 years. (*See id.*)

- Prior to the sentencing hearing, he received a draft of the sentencing memorandum prepared on his behalf by Sabbotta. (*See id.*, PageID.612.) He reviewed the draft and saw that Sabbotta asked the Court to impose a sentence of "no more than 20 years," rather than a sentence of 15 years. (*Id.*) He nonetheless continued to believe that Sabbotta was going to ask for a sentence of 15 years during the sentencing hearing. (*See id.*) And he did not ask Sabbotta any questions about why Sabbotta asked for a sentence of not greater than 20 years. (*See id.*, PageID.621-622.)

- He was surprised when Sabbotta asked for a sentence of not more than 20 years during the sentencing hearing. (*See id.*, PageID.622.) He voiced his surprise to Sabbotta at the defense table, and Sabbotta said "basically, like, don't worry about it." (*Id.*, PageID.622-623.)

- He spoke on his own behalf at sentencing and did not ask for a sentence of 15 years. (*See id.*, PageID.623.) Nor did he tell the Court that Sabbotta had promised to ask for a 15-year sentence. (*See id.*) He did not tell the Court about Sabbotta's promise because "at all the times I ever been in court, I never went that far as to talk to a judge" about what his lawyer "said he was going to do." (*Id.*)

- Also at sentencing, he told the Court that he "signed the plea agreement" because "what I did wasn't right." (*Id.*, PageID.624.)

- After the sentencing hearing, Sabbotta visited him in lockup, and he (Elbert) asked why Sabbotta had not asked for a sentence of 15 years. (*See id.*, PageID.613.) Sabbotta "said he didn't want to play on the judge's intelligence." (*Id.*)

- In his motion under 28 U.S.C. § 2255, he wrote – subject to penalty of perjury – that he would have gone to trial if Sabbotta had not promised to seek a 15-year sentence, but he said that statement was not true. (*See id.*, PageID.626-627.) He explained that that statement was made in error by the inmate who assisted him with his motion and that he did not catch that error even though he read the motion before it was filed. (*See id.*, PageID.627.)

- He could not identify any substantive points or arguments – other than asking for a 15-year sentence – that Sabbotta could have made at sentencing in favor of a shorter sentence. (*See id.*, PageID.630.)

Sabbotta's testimony conflicted with Elbert's testimony on the key points at issue in Elbert's motion. As relevant here, Sabbotta testified as follows:

- He has been practicing law since 1976 and has represented hundreds of criminal defendants – between both state and federal court – since that time. (*See id.*, PageID.633-634.)

- He first met with Elbert in the Genesee County Jail on October 21, 2017. (*See id.*, PageID.648.) That meeting lasted "a couple of hours." (*Id.*)

- During his first meeting with Elbert, he reviewed the strengths and weaknesses of the case with Elbert. (*See id.*, PageID.634, 651.) He also reviewed the discovery materials with Elbert. (*See id.*, PageID.651.) As a result of their discussions, he and Elbert came to "an understanding" about "the strength of the government's case." (*Id.*) That "understanding" included an acknowledgement that "the government's case was very, very strong" because the victims knew Elbert and his accomplice (and thus were easily able to identify them) and because Elbert was recorded on a phone call "trying to dissuade witnesses from testifying." (*Id.*, PageID.634-635.) In addition, by the time of Sabbotta's meeting with Elbert, Sabbotta knew

- that Elbert's co-defendant/accomplice "was going to be a government witness." (*Id.*)

- After discussing the strengths and weaknesses of the case, he and Elbert reviewed the proposed plea agreement. (*See id.*, PageID.635.) Elbert agreed to accept the agreement. (*See id.*, PageID.635-636.) One of the "major factors" that led Elbert to accept the agreement was the government's willingness to cap Elbert's sentence at 25 years. (*Id.*)

- He specifically discussed with Elbert the sentence for which he would advocate. (*Id.*, PageID.636.) He told Elbert that he "would ask the Court not to impose a sentence of more than 20 years." (*Id.*) He also told Elbert that he hoped that the Court might go below that figure based upon the Court's consideration of the mental health evaluation that he would include with the sentencing memorandum. (*See id.*)

- He never told Elbert that he would ask for a sentence of 15 years. (*See id.*, PageID.637.)

- After Elbert reviewed the draft sentencing memorandum with the request for a sentence of not more than 20 years, Elbert did not object in any way that the requested sentence was more than 15 years. (*See id.*, PageID.638.)

13

- He met with Elbert "right after the sentencing," and Elbert "was fine with the sentencing based on his factual scenario." (*Id.*) Elbert "never complained" about the sentence. (*Id.*)

- The first time he learned that Elbert was dissatisfied because he (Sabbotta) did not ask for a sentence of 15 years was when he received a copy of Elbert's current motion. (*See id.*, PageID.639.)

## II

Both of Elbert's claims sound in ineffective assistance of counsel. The standard governing such claims is well-established:

> To prevail on an ineffective-assistance-of-counsel claim, [a defendant] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). First, [a defendant] "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. Second, he must show prejudice, that is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

*Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020).

**III**

The Court turns first to Elbert's claim that Sabbotta rendered ineffective assistance by falsely promising that he (Sabbotta) would seek a 15-year sentence. The Court rejects this claim for two reasons.

**A**

First, Elbert has failed to show that Sabbotta performed deficiently. Elbert claims that Sabbotta's performance was unreasonable because Sabbotta "misrepresent[ed]" that he would seek a sentence of 15 years. (Elbert Supp. Br., ECF No. 99, PageID.677.) That claim rests entirely upon Elbert's testimony that Sabbotta promised to ask for a 15-year sentence. But the Court does not believe that testimony. Simply put, Sabbotta, who denied that he ever promised to seek a 15-year sentence, was a much more credible witness than Elbert. Sabbotta's demeanor was straightforward, matter-of-fact, and non-defensive. And his testimony matches up with the objective and agreed-upon evidence better than Elbert's testimony does. For instance, Sabbotta's testimony that he did not promise to seek a 15-year sentence is consistent with the undisputed fact that he filed a sentencing memorandum seeking a sentence of not more than 20 years and with the agreed-upon fact that Elbert never suggested (until now) that that request was somehow inconsistent with Sabbotta's prior representations.

Elbert's testimony, in contrast, does not make sense to the Court. If, as Elbert insisted, he agreed to plead guilty solely because Sabbotta promised to seek a 15-year sentence, then Elbert surely would have objected to Sabbotta's draft sentencing memorandum seeking a sentence of no more than 20 years. Elbert also would have complained to the Court during sentencing when Sabbotta asked for a sentence of no more than 20 years. Indeed, Elbert's prior complaints to the Court about Daly show that he was not shy about voicing his concerns about his legal representation. Given his prior complaints about Daly, his failure to speak out when Sabbotta requested a sentence of no more than 20 years is significant.

For all of these reasons, the Court accepts Sabbotta's version of events and rejects Elbert's version of events. Because the Court declines to credit Elbert's testimony, his claim that Sabbotta performed deficiently by misleading him – which rests entirely on his testimony – must fail.

Elbert counters that the Court should accept his version of events because the *only* reasonable explanation for his agreement to plead guilty is that Sabbotta promised to seek a sentence of 15 years. (*See* Elbert Supp. Br., ECF No. 99, PageID.675.) He highlights that when represented by Daly, he refused to sign the plea agreement that he signed once Sabbotta began representing him. He says that Sabbotta must have said "something" to "get [him] to change his mind." (*Id.*) And he insists that that "something" must have been Sabbotta's promise to seek a 15-year

sentence. Why else, Elbert asks, would he have agreed to accept the very same agreement he had earlier rejected?

But Elbert may have had several other reasonable reasons for accepting the deal that he had earlier rejected. As Sabbotta explained based upon his many years of practice, "sometimes when you have a second lawyer telling the same thing to an individual, it change[s] their mind." (2/25/21 Evid. Hr'g Tr., ECF No. 97, PageID.653.) Applying that principle here suggests that Elbert could reasonably have decided to accept the deal he had earlier rejected after hearing a second lawyer (Sabbotta) echo his first lawyer's (Daly's) opinion that the case against him was strong and that the plea deal was the best he could do. Sabbotta also explained that by the time he first met with Elbert, Elbert had become "very concerned about the 360 [months] to life" he was facing without the plea deal. (*Id.*) That concern could reasonably explain why Elbert would accept the deal even without an assurance by Sabbotta that Sabbotta would seek a 15-year sentence. For these reasons, the Court rejects Elbert's argument that the only reasonable explanation for his acceptance of the plea deal was that Sabbotta promised to seek a 15-year sentence.

**B**

Second, Elbert has failed to establish prejudice from Sabbotta's alleged misrepresentation. He has not shown a reasonable probability that the result of the sentencing proceedings would have been different if Sabbotta had requested a 15-

17

year sentence. Elbert's offenses were very serious and violent. And even though Sabbotta did not seek a 15-year sentence, he did present Elbert in the best possible light at sentencing. Indeed, Elbert cannot identify a single additional point that he thinks Sabbotta should have made on his behalf in connection with the sentencing.

The Court carefully considered the substance of the submissions by Sabbotta and the Government and carefully weighed the relevant factors under 18 U.S.C. § 3553(a) when it determined the appropriate sentence. (*See* 2/15/18 Sentencing Tr., ECF No. 73, PageID.380-385.) The Court then imposed a sentence that was well below the bottom of Elbert's guidelines range (which was 360 months). The Court can confidently say that it would not have imposed a lesser sentence even if Sabbotta had requested a 15-year sentence. Under these circumstances, Elbert cannot show prejudice, and his ineffective assistance claim fails for this independent reason.

IV

The Court next turns to Elbert's argument that Sabbotta was ineffective for failing to argue that Elbert's three prior Michigan drug convictions did not qualify "as serious drug offenses [that were sufficient] to trigger the 15 year mandatory minimum sentence contained within the Armed Career Criminal Act, 18 U.S.C. 924(e)." (Elbert Supp. Br., ECF No. 99, PageID.679.) To Elbert's credit, he acknowledges that this argument is currently foreclosed by Sixth Circuit precedent, and he explains that he "is raising the [argument] to preserve it for further appeal."

(*Id.*) Because, as Elbert concedes. this argument cannot succeed under current Sixth Circuit law, the Court will deny relief on this component of Elbert's ineffective assistance of counsel claim.

## V

For all of the reasons explained above, Elbert's motion to vacate his sentence (ECF No. 74) is **DENIED**.

Finally, the Court **DENIES** Elbert a Certificate of Appealability because reasonable jurists would not debate the Court's denial of relief and because Elbert's claims do not deserve further consideration by the Sixth Circuit. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

/s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 8, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 8, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764